# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.: 1:19-cr-012(1) |
|     Plaintiff, | : | |
| | : | JUDGE SUSAN J. DLOTT |
| v. | : | |
| | : | RESPONSE IN OPPOSITION TO |
| RYAN KING, | : | MOTION FOR DE NOVO REVIEW |
|     Defendant. | : | OF DETENTION |

The United States respectfully submits this response in opposition to Defendant Ryan King's motion for de novo review of detention (doc. #32). After a thorough hearing, Magistrate Judge Litkovitz found by clear and convincing evidence that the Defendant's release would pose an unacceptable risk of harm to the public and therefore ordered him detained pending trial. She memorialized that order in a written opinion. (Doc. #18.) Because the Magistrate Judge's analysis and conclusion are correct, and because King's motion not only fails to address salient points but is also contradicted by the record as to material matters, this Court should deny his motion. There is no need for a hearing.

The Magistrate Judge's Analysis and Conclusion Are Correct.

Section 3142(g) of title 18 sets forth factors that a judicial officer shall take into account in making the release-or-detain decision. Both at the hearing and in her written opinion, the Magistrate Judge correctly identified and applied these factors.

The first factor to consider is "the nature and circumstances of the offense charged, including whether the offense…involves a…destructive device." 18 U.S.C. 3142(g)(1). As the Magistrate Judge recognized, the "offenses charged involve destructive devices, for which danger

1

is plainly contemplated by the express reference to such devices in the first of the § 3142(g) factors." (Doc. #18 at PAGE ID# 45.) This is inarguable: the Defendant is explicitly charged with conspiracy to possess a destructive device in Count 1 and with actual possession of a destructive device in Count 2. (Doc. #1.) The Magistrate Judge's reasoning is widely shared by other courts. Her opinion correctly cites *United States v. O'Neill*, 144 F. Supp. 3d 428, 436 (W.D.N.Y. 2015), which directly supports the proposition, and other courts are in accord. *See, e.g., United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991) ("Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes… The possession of an unregistered firearm of the kind defined in § 5845, even if by a non-felon, involves a similarly blatant disregard for the law and a substantial risk of improper physical force.").

Moreover, although not noted by the Magistrate Judge, it is also relevant in assessing the nature and circumstances of the offenses charged here that, according to the indictment, the Defendant's conspiracy to possess destructive devices extended for at least five months. This was not a "one time"-type of offense. Rather, the Defendant's involvement with destructive devices ended only because of his arrest.

The second factor under 3142(g) concerns the weight of the evidence against the person. This factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). As the Magistrate Judge detailed in her order, the weight of the evidence in this case is very strong. The indictment itself includes significant evidence—beyond the mere allegations of possession or conspiracy—of the Defendant's dangerousness, including the following:

- Defendant King bought a wire assembly and inert grenades and "suggested methods '[i]f we want to get real lethal'" (Indictment ¶ 6b);

- Defendant King "discussed in detail various different improvised explosive devices and the methods for constructing them," and, "while examining a steel pipe and other parts, KING commented, 'This could go under the front seat of a car very easily, engine of a car, wired into the breaking,'" (Indictment ¶ 6b);

- Defendant King produced to his co-conspirator a destructive device inside his own home, which he referred to as a "crater maker" (Indictment ¶ 6c);

- In reference to a pipe, Defendant King "commented, 'That will fuck some shit up'… 'That's gonna fuck some shit up,'" discussed "how he envisioned throwing and detonating the devices against persons he is fighting," and stated that 'it's going to be lethal and if we want, we can pack it with BBs too.'" Defendant King advocated that he and his co-conspirator use a metal pipe, rather than a PVC pipe, "because metal would be more lethal." (Indictment ¶ 6e);

- Defendant King was a hands-on participant in detonating destructive devices on his co-conspirator's property (Indictment ¶¶ 6f, 6g);

- Defendant King built improvised initiation systems and "stated 'I want to focus on making these anti-personnel, I think these will be a lot more useful to us.'" (Indictment ¶ 6h);

- Defendant King advised a co-conspirator that he had previously built land mines and suggested building land mines to couple with gasoline or diesel fuel. (Indictment ¶ 6i).

In addition to the detailed evidence of dangerousness in the indictment, the United States proffered at the detention hearing nine images—seven photos from the execution of a federal search warrant at Defendant King's home and two screen captures. Copies of these images are

3

attached here for ease of this Court's reference. As the Magistrate Judge recognized, Defendant King had in his home—where he was living with his wife and two small children—"a 'project box' containing an improvised switching device" (doc. #18 at PAGE ID#45), as well as an arsenal of thousands of rounds of ammunition—including dozens of loaded, high-capacity magazines—and military-style, semi-automatic weapons. All of this is extraordinarily weighty evidence of dangerousness.

The third factor under § 3142(g) references the history and characteristics of the person. Relevant to this prong, the Magistrate Judge correctly noted that Defendant King was undertaking much of this extremely dangerous activity—including the possession of a destructive device—in his own home, where his wife and two children were residing. Further, the record, and particularly the details in the indictment, make clear that Defendant King has substantial experience in building explosives. The Magistrate Judge further emphasized that after "receiving *Miranda* warnings, the defendant misrepresented to federal agents that he had never experimented with explosive[s]." (Doc. #18 at PAGEID#45.) All of this is correct and weighs in favor of detention.

The final factor under § 3142(g) concerns the "nature and seriousness of the danger to any person or the community that would be posed by the person's release," and here again, the Magistrate Judge correctly concluded that the risk of danger is unacceptably high. Citing *O'Neill*, 144 F. Supp. 3d at 437, the Magistrate Judge properly reasoned that possession of a "crater maker"—or any other destructive device—"presents a substantial risk of physical injury to others." (Doc. #18 at PAGEID#45.) Moreover, as noted above, the record shows that Defendant King has significant, extensive experience and know-how in building destructive devices. As courts have recognized, where a defendant has such knowledge, there are no conditions of release that can disable him from doing so. *See United States v. Megahed*, 519 F. Supp. 2d 1236, 1244 (M.D. Fla.

2007). On top of all this, the record also indicates that Defendant King has significant training in survival tactics, itself another factor that courts have weighed in support of the seriousness of danger. *See United States v. Landis*, No. 2:08-cr-218, 2009 WL 416271, at *2 (W.D. Pa. Feb. 18, 2009).

In sum, the record and the law thoroughly support the analysis and conclusion of the Magistrate Judge. Her order of detention pending trial is correct.

<u>Defendant King's motion for de novo review lacks merit.</u>

In seeking a contrary conclusion, Defendant King motion emphasizes a few points, but the bulk of them are either contradicted by the record or non-responsive to § 3142(g) and the Magistrate Judge's order.

The record contradicts what appears to be the principal contention of the motion, namely, that "there was nothing more than loose talk" or that "no explosive devices were completed or found by law enforcement." (Doc. #32 at PAGEID#82, 83.) To the contrary, Count 2 of the indictment alleges that on January 5, 2019, Defendant King possessed a destructive device. Further, paragraphs 6f and 6g of Count 1 specifically allege that Defendant King and his co-conspirator not only possessed, but also detonated two destructive devices. Therefore, the principal ground for Defendant King's instant motion is refuted by the record.

This information is not only contained in indictment—video evidence of it has been provided in discovery. Indeed, the two screen-capture images that were proffered at the detention hearing and are attached here for the Court's reference, and which depict destructive devices in the Defendant's possession, are taken from videos provided in discovery. Accordingly, the United States is unsure why Defendant King's instant motion makes a contrary factual assertion with

reference to discovery. It is perhaps possible that Defendant King is proceeding on the assumption that only a pipe bomb is a destructive device within the meaning of the statute. If that is his assumption, it is incorrect. A "destructive device" under 26 U.S.C. § 5845(a)(8) is defined in § 5845(f) as "any explosive, incendiary, or poison gas (A) bomb, (B) grenade,…or (F) similar device." The devices that, according to the indictment, Defendant King possessed and detonated are "destructive devices," inasmuch as they are, as the Magistrate Judge found, "carbon dioxide cartridges containing an energetic powder and a fusing system." (Doc. #18 at PAGEID#45.) More colloquially, and using Defendant King's own words, these are explosive devices that make craters and can "take down a small tree" with the force of their explosions. (Doc. #1 at PAGEID#3, Indictment ¶ 6f.)

Other contentions in the motion are either contradicted by the record or not responsive to the factors in § 3142(g) that the Magistrate Judge analyzed. One is the claim that "King is not involved in a militia." (Doc. #32 at PAGEID#82.) The indictment directly contradicts that assertion in its first paragraph, which alleges that Defendant King was a member "of the United Sheepdogs of Ohio…a militia group." More important, though, are the indictment's second and third paragraphs, which allege that Defendant King and his co-conspirator established a subset of the Sheepdogs militia group that they referred to "as the 'Special Projects Team,'" the purpose of which was to "construct, use and stockpile destructive devices." Accordingly, however harmless counsel's review of the Sheepdogs Facebook page may be, that is irrelevant to the dangerous circumstances of the offenses actually charged.

Finally, Defendant King's motion references his home, wife, and two children, presumably in support of the proposition that he has community ties and is not a flight risk, but this is entirely non-responsive to the Magistrate Judge's valid view that Defendant King was building and

possessing destructive devices—along with huge quantities of ammunition loaded in high-capacity magazines—in this very home where his wife and two children were living. These facts support, rather than undermine, the Magistrate Judge's correct conclusion on dangerousness to others.

No Hearing Is Necessary.

The record establishes the correctness of the Magistrate Judge's decision to order Defendant King detained pending trial. In resolving the instant motion, this Court's review is de novo, but "[d]e novo review does not require an additional evidentiary hearing." *Landis*, 2009 WL 416271, at *2. Defendant King's motion, moreover, does not request a hearing.

Conclusion

This Court should deny Defendant King's motion.

Respectfully submitted,

s/*Benjamin C. Glassman*
BENJAMIN C. GLASSMAN (0077466)
United States Attorney
SHEILA G. LAFFERTY (0042554)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Benjamin.Glassman@usdoj.gov
Sheila.lafferty@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Response in Opposition to Motion for De Novo Review of Detention was filed with the Court's CM/ECF system this 22nd day of April, 2019, which provides electronic notice to all parties.

s/*Benjamin C. Glassman*
BENJAMIN C. GLASSMAN (0077466)
